And the last case of this afternoon, number 18-2061, Ezekwo v. Quirk et al., Mr. Moskowitz and Mr. Barats. Good afternoon. My name is Joshua Moskowitz. I represent the appellants, Dr. Chukwuemeka Ezekwo and Dr. Afoma Ezekwo. Would you like to reserve time for rebuttal? If I may, I would like to reserve five minutes. That's fine. May it please the court, this lawsuit was never just about money for the Ezekwos. That's what the district court and the Ezekwos' former attorneys misunderstood. It is clear that this case meant much more to the Ezekwos than money because they refused to accept an offer to settle the case of 1.31 million dollars. But how much they're not either apparent authority or actual authority once you run through those? Certainly. First of all, I guess, is it federal law or state law that we apply here? I believe the parties are in agreement that state law should govern here because we have both federal and state law claims. This court's decision in Tiernan set out, addressed that same issue and concluded that it made the most sense to have state law govern, so there would be uniform rule. Some claims wouldn't be governed by one law and some claims governed by another. On the question of settlement, though, is there any real difference between what would be a binding settlement under state law or federal law? Would there really be? And I don't believe there would be. Our position is that in any, under either law, there was not a binding settlement here because the Ezekwos' former attorneys did not have actual authority. Actual authority can come in the form of express or implied authority or apparent authority. Now, apparent authority... What about the email that's been referenced several times where your clients told their attorneys, just settle this case, we don't need to be there? That email was sent in January of 2017 for... Isn't that express and or implied authority to settle the case? I believe that is not. It gave them authority to settle the case if it included all the terms that the Ezekwos had instructed them and discussed with them throughout the many years of the case were included in that settlement. That was beyond money. The attorneys made it very clear in their testimony at the November 2017 hearing... What about the fact that the complaint didn't ask for equitable relief? I don't believe that's a bar to requesting any type of relief in a settlement negotiation. Judge, what evidence do you have that these equitable conditions, as it were, demands were made other than the documents submitted late in the day? Well, the Ezekwos' declarations were submitted indicating that they had discussed these terms. When were they submitted? Those were submitted as part of our Rule 72 objections. Well after this settlement, as it were, had been consummated in the eyes of the magistrate judge. Prior to that, had there been any references in any of these discussions or in this record that there were equitable demands? Yes. The testimony of the attorneys at the November 2017 hearing, pages 1047 through 1175 of the appendix, there are numerous references to them saying, yes, we had discussed these issues with the Ezekwos numerous times throughout this case. They agreed with that. They didn't deny that fact. They admitted that the Ezekwos raised with them constantly issues about harassment from town officials following the May 2013 incident, that they had raised concerns with them about the fact that one of the officers was still working for the town, that they had raised concerns about the fact that this press statement still existed online and had never been corrected. So there is testimony from the Ezekwos' own former attorneys that they had discussed these issues and they understood the importance of those issues to the Ezekwos. You were demanding for the settlement something that if you tried the case and won it, you couldn't have gotten. For example, the court, the big thing was the termination of the one police officer. That could have never been an outcome of this litigation. I mean, I suppose you can agree on a settlement, but I'm not sure you can even do that without the knowledge and the opportunity of the policeman to object to that and say, no, no, no, you can't terminate me. What I did was justifiable. I mean, how could they settle it on that basis? You can't just fire a policeman. There have to be hearings, all kinds of things. So you were asking for something you could have never gotten as an outcome of a litigation had the case been tried to a judgment. I agree, Judge Greenberg, that termination of the officer was not a relief that the Ezekwos could achieve if they litigated this case to a verdict and a judgment. But that doesn't limit them in requesting that relief as part of a settlement. But then also, you didn't want to be harassed. Well, that's sort of a vague thing, what constitutes harassed. And then to correct the story, that not only could have been. The settlement was things that you couldn't have gotten. If that was part of the settlement, well, I do understand that they asked for it, but they couldn't have gotten it out of you. We agree, of course, that those are things they could not have gotten out of a judgment in this case. But that doesn't preclude them from requesting those things in a settlement. A party certainly can't demand an apology as part of a judgment in a case, but they can certainly ask for one in order to settle it. In fact, the court should encourage parties to find unique ways to resolve a case that might not involve all the relief they can get out of taking the case all the way to a judgment. Your argument, as I understand it, is that the district court, in abuse of discretion, adopted the recommendation from the magistrate judge. Where is the abuse of discretion? The district court reviewed the testimony. There's no requirement, I think you'd agree, that she has to have a do-over, right? She doesn't need to take the testimony again under Rule 72. That's correct, Your Honor. She has to review the record. That's correct. And specifically address the objections, which she did. So how was it an abuse of discretion for her to have adopted the R&R? Because the Supreme Court has said on a Rule 72 objection that it is within the district court's discretion whether or not to conduct a de novo hearing. There can be times, then, of course, where there can be an abuse of that discretion. Where is the abuse here? We say it's an abuse of discretion here, where there's a factual finding at issue, whether or not there was authority of the attorneys to enter into this agreement. And the execuose, who painted, obviously, a very contrary picture to the testimony of their attorneys that were held at the... Opted not to testify. We're back here. It's kind of like the last case. They opted not to testify. They were given an opportunity to testify. They were given an opportunity to hire counsel. They didn't do either. We don't agree that they were given a reasonable opportunity to do those things. They learned about the hearing that was going to take place on November 3, 2017, only seven business days before, on October 25, 2017. At that point... Did they ask for a postponement of the hearing so they could get counsel? They did. Two days later, on October 27, 2017, they submitted a letter to the magistrate requesting additional time, reasonable additional time, not an indefinite adjournment, so that they could obtain counsel. They appeared at the conference, which at that point had been adjourned from a Friday to a Monday. It's now November 7, 2017. And the first thing they did was ask for an adjournment so that they could retain counsel. It wasn't for no reason at all. It was specifically so that they could have counsel. They had dismissed their counsel months before then. I'm not sure that's an accurate portrayal of the logistics here. They had dismissed their counsel four months prior to the hearing. There was a four-month interval they could have interviewed attorneys. And there was everything to suggest in the record to them, as pro se litigants, that nothing else was going to happen in this case until this motion was decided and it was remanded back to trial as they had requested or settlement was enforced. What about the case management order they received in July? The case management order that indicated case closed? No, the case management order, 462, that outlined the case going forward. They received a case management order documented on July 14, 2017. So from that point, they knew this case was moving forward. No, to be correct, they certainly understood that this case was going to be decided. The motion had to be decided. They didn't understand that anything else would happen until that motion was decided. They never had any understanding that there would be a hearing. Look at this order. I mean, the order speaks for itself. There's a whole bunch of dates telling them what's going to happen. There were a number of indications that they were going to have continuing conferences with the judge, but there was no indication to them that they were going to have a proceeding at which testimony would be given. Their former counsel would be called to testify. They'd be forced to cross-examine their own former counsel and put their own testimony on. That's a much different thing than appearing at a conference to discuss the pending motion. What else could they possibly perceive? I'm sorry, I don't know. What else could they possibly perceive other than this motion is going to be heard and ultimately decided? Well, they certainly understood the motion was pending and will be decided, but they never understood that there would be a live hearing at which testimony would be given. They had submitted opposition in paper, but they had received an automatic response from the clerk's office that the motion would be decided on paper unless and until the court said otherwise. The first indication of that otherwise to them was on October 25th, 2017, seven business days before the hearing, that they were going to be asked to appear, present their own testimony, and the most difficult thing, cross-examine their own former counsel without the assistance of new counsel at that point. And that didn't go all that well. It went as well as I think it possibly could go for someone in that position. I mean, that's a terribly difficult position for someone to be in. So from your perspective, the magistrate judge should have laid all this out in some sort of an order to explain exactly what was going to happen on the horizon? Or better yet, simply granted a short adjournment for them to obtain counsel. It was their first request for an adjournment. They had a reasonable basis for requesting it. And I think in any other situation, certainly any that I've been in, if an attorney asks for a first adjournment for good cause, it's usually granted. We'll hear it back from the other panel. Mr. Barats. Your Honors, if it pleases the Court, Alan J. Barats. I'm with the Wiener Law Group, and I represent the city of Englewood. Apropos of Judge Ambrose's quotation in the earlier argument, showing up at an evidentiary hearing isn't 85% of the game, particularly when you offer cross-examination of adverse witnesses. I misquoted. I think he may have said showing up is 90% of, let me say, of life, yeah. Oh, okay. Particularly when you refuse to testify and there's no Fifth Amendment protections implicated. At page 7 of the Respondent's Brief, they mention Judge Restrepo's discussion of the August 15th teleconference. At that teleconference, let's not forget, the Ezekiel's doctors told the magistrate judge, no, we're going to represent ourselves. They confirmed it. They fired their counsel. They will represent themselves until the motions are heard, and that included the motion to enforce settlement, which was then pending. I think they said decided, until the motions are decided. Decided, okay. And so there was no question. As concerns Your Honors' mentioning of the state law versus federal law, I was interested by that request for a supplemental briefing, and I do agree with counsel that the Tierney decision of this court should establish, and I also agree with Judge Greenberg, that the standards are the same as to the apparent authority or actual authority. The only difference, I think, is federal law governs the issue of whether or not. How can you say there's apparent authority here when the Ezekiel's never communicated with any of the defendants or their attorneys directly? Okay. It started before the holidays, before the February conference, okay, and before the January email that Dr. Ezekiel sent to her lawyer saying settle the case. It started before that when a stipulation was entered into with the authority of their attorneys that they would not have to appear for depositions, but they'd agree not to testify at trial, and that they'd agree not to present any expert evidence at trial of any permanent physical or emotional injuries. We started talking settlement then. To think that Mr. Maggiano and Mr. Romanucci, without authority, entered into such an agreement and stipulation would be ludicrous for us to think. We had to think, Judge, on the defense side, that they had their client's authority at that time, and then when we appeared for the first settlement conference with the magistrate judge and the Ezekiel's both appeared, they sat in the courtroom. They sat directly next to Mr. Maggiano and Mr. Romanucci. Yes, they did not go into the jury room for the settlement conference, but they were with them. They were talking to them the whole time. They were communicating, and then after that, until the next conference at issue, it was affirmed. We were still talking. We were trying to settle the case. Once the stipulation of them not having to appear for depositions after maybe 15 depositions of defense witnesses, and that they wouldn't testify at trial, experience counsel got into talking about settlement. There was nothing we had reason to believe that they were doing that outside of the authority of their client. Judge Greenberg has a question. I'm sorry, Judge Greenberg. Yeah, I noticed that the magistrate judge said the following, although clients were advised by the court that they were welcome to take the witness stand to testify on their own behalf or to call their attorneys to testify, they declined to do either. Then the sentence says, Accordingly, the uncontradicted evidence established that clients authorized their counsel to enter into the essential terms of the settlement. Well, I mean, I don't know how he thought it was uncontradicted. That was what the whole thing was about. No, Your Honor, quite to the contrary. There was no contrary evidence other than that which their former attorneys presented in documenting that they had actual authority and that there was a desire to settlement and that these after-the-fact requests were never conditioned. And let's go back to that because Judge Restrepo was asked a question and counsel was quoting from what was said at the hearing about that. Let's quote the whole thing, what Mr. Maggiano said. He admitted, We had discussed these thoroughly, and I explained to the Ezekiels what this case was all about, what was the allegations in the complaint, and that the settlement would be based on the allegations in the complaint. He explained basically that they were not made as conditions. That's the words he said. Yeah, there were concerns that the Ezekiels had, whether or not they were. I mean, the Ezekiels didn't follow through on the concerns. Mr. Maggiano explained how he said, If you want, I'll get a PR guy to put in a contrary press release. If you want, I have people who can get surveillance at your home. They didn't want to follow through on it. Those things, to think that they were conditions of the settlement when these experienced attorneys say to the contrary, There was undisputed evidence. There was no dispute but that there was actual authority and that there was a meeting of the minds on essential terms. Well, I mean, if you're representing me, and you said I've got a really good deal for you on money, and I come at you with something very irrational, I don't want just the money. I want, you know, the sun, the moon, and the stars. And you're going, hey, hey, Ambrose, it ain't going to happen. You can't have it. But at that point, I haven't given you the authority, have I? Correct. But there's no evidence that that happened in this case. The evidence is undisputed that that didn't happen, that those discussions happened in 2016 with Mr. Maggiano. When he went to their house and they were answering interrogatories and they were talking about things, and he gave them the suggestion of the PR guy and the surveillance video and things like that. That didn't happen around the time of the settlement. The first time we started talking about settlement was around the holidays, the Christmas, New Year's holidays of 2016 into 17, when, after all the depositions of the defendants, we couldn't get the plaintiffs to be deposed. And part of the reason was because Mr. Ezequiel was on bail condition from a prior criminal charge, and that psychiatrist said that he could not testify. He would not be able to handle it emotionally. And that's when we started talking settlement. I said, look, if you can't testify at a depth, you can't testify at trial, okay, I'll talk to my clients. We made that agreement. They agreed not to – we wouldn't have them examined by a psychiatrist. They agreed that they wouldn't offer any proof at trial of a medical expert for any permanent physical or emotional injury. At that time, we said, you know what? The video looked bad. Attorney's fees are significant. They have two attorneys here, very experiential. And so we entered into a settlement. And that's how you get to 1.31, Your Honors, in a case where two people weren't going to testify at trial and they weren't going to present any medical proof of any permanent psychiatric or physical injuries. So what you're really saying is that there's testimony of the attorneys that here's the authority that we had and that there's really no cross-testimony at the hearing that, in fact, that's not the case. Correct. And it was. And what was presented in the declarations, as Judge Restrepo mentioned, after the fact, it was after-the-fact emails, after-the-fact. And that's so probative of what reasonably was in the minds of Mr. Maggiano and Romanucci when they wrought for their clients an excellent settlement that was not done in the spur of the moment. This was over two settlement conferences, many telephone calls, and back and forth with the judge, and a mediator's proposal made by a judge who was very familiar with the case. And all of the reasons that we were there to settle. Unless the court has anything further, I think the last thing I want to speak of is this. The only federal law that may apply, I believe my partner expressed in his supplemental briefing, is whether or not the district court abused discretion in not conducting a further hearing. Maybe that's because it implicates a federal role. And clearly here I believe from Judge Restrepo's first statement to counsel is that that's a may and it's not required. And clearly here, if there was any disputed evidence at the evidential hearing, then maybe it would have been appropriate for the district judge either to conduct a further evidential hearing to flesh out those inconsistencies or to remand it to the magistrate judge for a further hearing with instructions. But here there was nothing in dispute. And to be honest with you, they were there and they tried to cross-examine. Of course, they're doctors, they're not lawyers. But testify. Tell the judge. But you know what, Judge, maybe they didn't want to testify because they were down to earth. Their testimony would have been about the incident at the hospital initially, right? No, no. I'm talking about when there was depositions of 15 people and then they didn't want to be. Right. And that's when the attorneys really started getting very strong. Yeah, but there was a significant issue between these two individuals after the fact for which he was charged with attempted murder of his wife, of his mother. And that's there was there was a pending criminal charge. And that's the same bail condition that the psychiatrist handling it said he better not testify to that. No, no. There was a lot of issues here as to causation, as to damages. And that was part of the problem. So that's why he couldn't testify. And she couldn't testify. But so my point is that there would be no reason for the district judge to ask the magistrate judge to convene another hearing with instructions or to conduct the hearing himself because or herself because there was no discreet us anything. Thank you. Thank you. So I'd like to begin by referencing counsel's explanation as to the reason that the exec was entered into a stipulation that they wouldn't testify. Certainly that confirmed exactly why it is that they needed counsel at this November 2017 hearing. Everyone knew that, including the magistrate. And yet they were denied even one opportunity, one adjournment to get counsel. For months before that, there was going to be this hearing, right? No, they only found out about that hearing on October 25th, 2017, which was seven business days before the hearing was then set to take place. It took place one business day later than that. Right. But they knew that they didn't have attorneys from the day they fired their attorneys four months earlier. That's certainly correct. And as they understood it, nothing else is going to happen in the case until those motions were decided. And that's based on the court. All the court papers that they received indicated the case was closed. Their attorneys wrote to them in April 2017, and they refused to sign the releases that didn't have the terms they wanted and indicated that the judge dismissed the proceedings once both sides informed her of the settlement agreement. There is no case pending any longer based upon the agreement. They had a completely reasonable understanding that there would be no live hearing take place where they would have to testify or cross-examine their former counsel. They had no way to know that until they got notice of that on October 25th, 2017, seven business days before that hearing was supposed to take place. So I'd like to also address briefly, there were indications in the record at that November 2017 hearing that the former counsel knew about the terms that the Zeclos had raised with them numerous times, including at page 1086 of the record, where Mr. Romanucci was being cross-examined, and he indicated affirmatively that he understood a cease and desist order or stipulation was something that they had been demanding. He said, yes. He said, I believe your answer. The answer to your question is partially correct. Right. So it's not true that the record was completely devoid of any indication that there was that there was a dispute about whether or not these were real terms that the Zeclos had made as conditions to resolving this case. And because of that, it's our argument that the district court abused her discretion by not conducting another full hearing at which the Zeclos could be represented, could testify, could meaningfully cross-examine their attorneys. To say that the record, without that opportunity, was devoid of any dispute simply begs the question. If they had been allowed to testify, would there not then be a dispute that would need to be resolved and would have to be resolved based on live credibility determinations made after live testimony? So are you asking us to blow up the settlement and send this to trial or to amend the settlement to include the terms they wanted? I don't believe the court has that authority. I believe the court should vacate, remand, and order, instruct the district court to conduct a de novo hearing at which the Zeclos can cross-examine their former counsel and provide their own testimony in order to determine. In other words, was there authority? Was there authority. That's correct. That's the issue that still remains. And if not, there's then a trial. That's right. And as to the issue of apparent authority, I'd like to address a couple things counsel said. Apparent authority, as this court has explained it, is only created in the eyes of a third party who then relies upon that appearance, but it has to come from statements or conduct of the principal, of the client. It can't come from the agent. The attorneys themselves can't create their own appearance of authority. There is nothing in this record that indicates the Zeclos had any direct communication with the defendants or their counsel that would somehow give the suggestion that their counsel were cloaked with unbridled authority to settle this case for just money. Thank you very much. Thank you to both counsel for well-presented arguments. And we'll take the matter under advisement and recess for today.